UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER A. HUTH,<br><br>       Plaintiff,<br><br>   v.<br><br>FALCON MINERALS CORP., CLAIR R. HARVEY, WILLIAM D. ANDERSON, ERIK C. BELZ, BRYAN C. GUNDERSON, MARK C. HENLE, ALAN J. HIRSHBERG, ADAM M. JENKINS, and STEVEN R. JONES,<br><br>       Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction ("Proposed Transaction") announced on January 12, 2022 pursuant to which Falcon Minerals Corp. ("Falcon Minerals" or the "Company") will merge with Desert Peak Minerals ("Desert Peak").

2. On January 11, 2022, Falcon Minerals Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Under the Merger Agreement, Falcon Minerals will combine with Desert Peak, which will be publicly traded on NASDAQ under a new ticker symbol, to be determined later. Pursuant to the terms of the Merger Agreement, Falcon Minerals shareholders will own approximately 27% of the combined company (the "Merger Consideration").

3. On February 9, 2022, in order to convince Falcon Minerals' shareholders to vote in

favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, a special meeting of Falcon Minerals' stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Falcon Minerals' stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Falcon Minerals shareholder.

10. Falcon Minerals is a Delaware corporation and a party to the Merger Agreement. Falcon Minerals shares are traded on the NASDAQ under the ticker symbol "FLMN."

11. Defendant Claire R. Harvey is Chairwoman of the Board and a director of the Company.

12. Defendant William D. Anderson is a director of the Company.

13. Defendant Erik C. Belz is a director of the Company.

14. Defendant Bryan C. Gunderson is a director of the Company.

15. Defendant Mark C. Henle is a director of the Company.

16. Defendant Alan J. Hirshberg is a director of the Company.

17. Defendant Adam M. Jenkins is a director of the Company.

18. Defendant Steven R. Jones is a director of the Company.

## FACTS

19. Falcon Minerals was formed to own and acquire royalty interests, mineral interests, non-participating royalty interests and overriding royalty interests (collectively, "Royalties") in oil and natural gas properties in North America, substantially all of which are located in the Eagle Ford Shale. These Royalties entitle the holder to a portion of the production of oil and natural gas from the underlying acreage at the sales price received by the operator, net

of any applicable post-production expenses and taxes. The holder of these interests has no obligation to fund exploration and development costs, lease operating expenses or plugging and abandonment costs at the end of a well's productive life.

20. Desert Peak is a mineral and royalty company. The Company is engaged in acquiring, owning, and managing mineral and royalty interests in the Permian Basin. The Company focuses on investing in Permian Basin mineral and royalty interests. Its primary objective is to provide a return to stockholders by acquiring mineral and royalty interests in the Permian Basin.

21. On January 11, 2022, Falcon Minerals Board caused the Company to enter into the Merger Agreement.

22. According to the press release announcing the Proposed Transaction:

DENVER, Colorado and HOUSTON, Texas—(January 12, 2022)—Desert Peak Minerals ("Desert Peak") and Falcon Minerals Corporation (NASDAQ: FLMN, FLMNW) ("Falcon") announced today that they have entered into a definitive agreement to combine in an all-stock transaction which values the combined enterprise at $1.9 billion. The combination is expected to create a premier mineral and royalty company at the front end of operators' cost curves, with low leverage, an emphasis on shareholder returns and a significant footprint in the Permian Basin and Eagle Ford.

The combined company will remain focused on consolidating high-quality mineral and royalty positions in the Permian Basin while optimizing its existing asset base. It is positioned to become a leading consolidator in the space through increased scale and an experienced Board of Directors and management team with a track record of consummating large, accretive acquisitions.

***

At the closing, Desert Peak will become a subsidiary of Falcon's operating partnership ("OpCo"). The combined company will retain Falcon's "Up-C" structure, and Desert Peak's equityholders will receive 235 million shares of Class C common stock, which number shall be adjusted in connection with the reverse stock split described below, with voting rights in the combined company and a corresponding number of limited partner units representing economic interests in OpCo. Desert Peak's equity holders may receive additional equity consideration, subject to certain exceptions, to the extent that, at the closing, Desert

Peak's net debt is less than $140 million (based on a $5.15 per Falcon Class A share price).

Upon completion of the transaction, assuming no adjustments to the equity consideration for Desert Peak's net debt, Desert Peak's equityholders will own approximately 73% and existing Falcon shareholders will own approximately 27% of the combined company. Based on the closing price of Falcon's Class A common stock of $5.45 on January 11, 2022, the combined company, including the value of OpCo limited partnership units not owned by Falcon, will have an initial equity market capitalization of approximately $1.76 billion and enterprise value of approximately $1.92 billion, including Class A and Class C common stock.

(internal footnote omitted)

\*\*\*

**<u>Advisors</u>**
Barclays is serving as lead financial advisor to Falcon's Transaction Committee, and Houlihan Lokey also served as a financial advisor to the Transaction Committee. Latham & Watkins LLP is serving as Falcon's legal counsel, and White & Case LLP is serving as legal counsel to the Transaction Committee. Vinson & Elkins LLP is serving as legal counsel to Desert Peak and Kimmeridge.

23. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24. It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25. Section 5.3 of the Merger Agreement has a "no solicitation" clause that prevents Falcon Minerals from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

No Solicitation

- b. From and after the date of this Agreement, Ferrari and its officers and directors will not, and will cause Ferrari's Subsidiaries and their respective officers and directors not to, and will use reasonable best efforts to cause the other Representatives of Ferrari and the Ferrari Subsidiaries not to, directly or indirectly:

     i.    initiate, solicit, propose, knowingly encourage or knowingly facilitate any inquiry or the making of a Competing Proposal or any inquiry, proposal or offer that constitutes or that would reasonably be expected to lead to a Competing Proposal;

     ii.    engage in, continue or otherwise participate in any discussions or negotiations with any Person relating to, or in furtherance of a Competing Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to a Competing Proposal;

     iii.    furnish any non-public information regarding Ferrari or the Ferrari Subsidiaries, or access to the properties, assets or employees of Ferrari or the Ferrari Subsidiaries, to any Person in connection with or in response to any Competing Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to a Competing Proposal;

     iv.    enter into any letter of intent or agreement in principal relating to, or other agreement providing for, a Competing Proposal (other than a confidentiality agreement as provided in Section 5.3(e)(ii) entered into in compliance with Section 5.3(e)(ii)); or submit any Competing Proposal to the approval of the stockholders of Ferrari;
provided, that notwithstanding anything to the contrary in this Agreement, Ferrari or any of its Representatives may, in response to an unsolicited inquiry or proposal, (A) seek to clarify the terms and conditions of such inquiry or proposal to determine whether such inquiry or proposal constitutes, or would reasonably be expected to constitute, a Superior Proposal and (B) inform such a third party or its Representative of the restrictions imposed by the provisions of this Section 5.3 (without conveying, requesting or attempting to gather any other information except as otherwise specifically permitted hereunder).

26.    In addition, Section 8.1 of the Merger Agreement requires Falcon Minerals to pay up to a $13,900,000 "termination fee" in the event this agreement is terminated by Falcon Minerals and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Falcon Minerals' ability to consider other offers.

27.    Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

28.    The Proxy omits material information concerning Falcon Minerals' and Desert

Peak's financial projections.

29. With respect to Falcon Mineral's financial projections, the Proxy fails to disclose all line items underlying (i) Revenue; (ii) EBITDA; and (iii) Production.

30. With respect to Desert Peak's financial projections, the Proxy fails to disclose all line items underlying (i) Revenue; (ii) EBITDA; and (iii) Production.

31. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. Second, the Proxy omits material information regarding the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in connection with the Proposed Transaction.

33. With respect to Houlihan Lokey's *Select Company Analysis*, the Proxy fails to disclose the multiples and metrics for the selected companies observed by Houlihan Lokey in its analysis and the representative ranges used to calculate financial multiples.

34. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis,* the Proxy fails to disclose (i) the present value of the future pre-tax flows; (ii) present value of future unlevered post-tax cash flows; (iii) "Strip Pricing" and "Consensus Pricing"; (iv) the terminal/continuing exit value of the Company; (v) the terminal/ continuing exit value of Desert Peak; (vi) the individual inputs and assumptions underlying Falcon Mineral's WACC discount rate of 10.5% to 12.5%; and (vii) the individual inputs and assumptions underlying Desert Peak's WACC discount rate of 9.5% to 11.5%;

35. Third, the Proxy fails to disclose the amount of Houlihan Lokey's compensation

received or that will be receive in connection with the Proposed Transaction and how much of that compensation is contingent on the Proposed Transaction closing.

36. The omission of the above-referenced material information renders the Proxy false and misleading.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material

facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were, therefore, negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

42. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 2, 2022

                                                        **MOORE KUEHN, PLLC**

                                                        */s/Justin Kuehn*

                Justin A. Kuehn
                Fletcher W. Moore
                30 Wall Street, 8th floor
                New York, New York 10005
                Tel: (212) 709-8245
                jkuehn@moorekuehn.com
                fmoore@moorekuehn.com
                *Attorneys for Plaintiff*